# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RADIOSHACK CORPORATION, *et al.*, | ) | |
| | ) | Case No. 15-10197 (BLS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| Salus Capital Partners, LLC, in its capacity as Agent | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Proc. No. 15-50239 (BLS) |
| | ) | |
| Standard Wireless Inc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
CANTOR FITZGERALD SECURITIES LLC, AS ABL AGENT, TO
DISMISS THE COMPLAINT OF SALUS CAPITAL PARTNERS, LLC
FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6) AS INCORPORATED
<u>BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 7012</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .............................................................................................................................2

    I.    Salus's Factual Allegations ...........................................................................................2

    II.    Salus's Claims .................................................................................................................4

ARGUMENT....................................................................................................................................5

    I.    STANDARD OF REVIEW AND APPLICABLE LAW............................................5

        A.    To Survive a Motion to Dismiss, Salus Must Plead a "Plausible Claim for Relief"...............................................................................5

        B.    New York Law Applies to This Adversary Proceeding ..............................5

    II.    SALUS FAILS TO STATE A CLAIM AGAINST THE ABL AGENT......................................................................................................................5

        A.    Salus Fails to Allege Any Facts to Support Its Claims Against the ABL Agent ................................................................................5

        B.    The ABL Agent Is Not Liable under Agency Law Principles for Disgorging Payments It Is Contractually Required to Make to the ABL Lenders .......................................................7

        C.    The Intercreditor Agreement Unambiguously Precludes Salus from Seeking Disgorgement from the ABL Agent ..........................8

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

                                                                                                                                                        **Page(s)**

**CASES**

*Addy v. State Farm Ins. Companies*,
    No. 09-02674, 2010 WL 1408886 (D. Ariz. Apr. 7, 2010) ........................................................ 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................. 5

*Balascio v. Leitzke (In re Leitzke)*,
    No. 13-12156, 2014 WL 3583706 (Bankr. D. Del. Jul. 18, 2014) ............................................ 6

*Bates v. Harbert Mgmt., LLC (In re Dixie Pellets, LLC)*,
    No. 09-05411, 2010 WL 2367326 (Bankr. N.D. Ala. June 9, 2010) ........................................ 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................. 5

*Bethea v. Roizman*,
    No. 11-00254, 2012 WL 2500592 (D.N.J. June 27, 2012) ....................................................... 6

*Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*,
    195 B.R. 971 (Bankr. D. Mass. 1996) ...................................................................................... 8

*Burtch v. Huston (In re USDigital, Inc.)*,
    443 B.R. 22 (Bankr. D. Del. 2011) ........................................................................................... 6

*Greenfield v. Philles Records, Inc.*,
    98 N.Y.2d 562, 780 N.E.2d 166 (2002) ............................................................................... 8, 9

*Hooper v. Robinson*,
    98 U.S. 528 (1878) ................................................................................................................... 7

*Horan v. Danton (In re Prof'l Video Ass'n, Inc.)*,
    2000 WL 33712295 (Bankr. D. Del. Aug. 8, 2000) ................................................................. 5

*J. D'Addario & Co. v. Embassy Indus. Inc.*,
    20 N.Y.3d 113 (2012) ............................................................................................................... 9

*Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*,
    405 B.R. 113 (Bankr. D. Del. 2009) ......................................................................................... 6

*Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*,
    426 B.R. 96 (Bankr. D. Del. 2010) ........................................................................................... 8

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ............................................................................................5

*Poindexter v. EMI Record Grp. Inc.*,
    No. 11-CIV-559, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ....................................9

*Six Flags, Inc. v. Parc Mgmt., LLC (In re Premier Int'l Holdings, Inc.)*,
    443 B.R. 320 (Bankr. D. Del. 2010) ...............................................................................9

*U.S. Bank Trust Nat'l Assoc. v. AMR Corp. (In re AMR Corp.)*,
    730 F.3d 88 (2d Cir. 2013) ..............................................................................................9

*United States v. Cambridge Trust Co.*,
    300 F.2d 76 (1st Cir. 1962) .............................................................................................7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................5, 9

Federal Rule of Bankruptcy Procedure 7012 ...............................................................................5

Cantor Fitzgerald Securities LLC, in its capacity as administrative agent under the Amended ABL Credit Agreement[1] and the successor-in-interest to General Electric Capital Corporation under the Original ABL Credit Agreement, as amended ("Cantor Fitzgerald" or the "ABL Agent"), by and through its undersigned counsel, files this brief in support of its motion to dismiss the Adversary Complaint (the "Complaint") filed by Salus Capital Partners LLC ("Salus") in its capacity as agent for the SCP Lenders.

## PRELIMINARY STATEMENT

All of Salus's claims are without merit and must be dismissed. The ABL Agent joins in each of the arguments made in the ABL Lenders' Memorandum and incorporates them by reference herein for the reasons provided therein.

The ABL Agent submits this Memorandum of Law to address additional reasons why the Complaint fails to state a claim against it. The Complaint makes virtually no allegations about the ABL Agent. Notably, the Complaint does not allege that the ABL Agent (i) was an ABL Lender, (ii) received for its benefit any of the funds that Salus now seeks disgorgement of, or (iii) acted as anything more than the administrative agent for the ABL Lenders. The Complaint must be dismissed against the ABL Agent because it is not named in any of the counts in the Complaint or in Salus's prayer for relief.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the *Memorandum of Law in Support of the Motion of the ABL Lenders to Dismiss the Adversary Complaint of Salus Capital Partners, LLC* (the "ABL Lenders' Memorandum") [D.I. 16] filed contemporaneously herewith by, among others, (1) funds managed or advised by BlueCrest Capital Management (New York) LP; DW Partners, L.P.; Macquarie Credit Investment Management Inc., Mudrick Capital Management, LP; Saba Capital Management, L.P.; T. Rowe Price Associates, Inc. and Taconic Capital Advisors L.P. and (2) two affiliates of Standard General L.P., General Retail Holdings L.P. and General Retail Funding LLC.

Moreover, Salus's disgorgement claim (Count 4) against the ABL Agent must also be dismissed because the ABL Agent acted in a pure agency role for the ABL Lenders in its administration of the Amended ABL Loans and is not an ABL Lender and therefore cannot be liable for funds it simply passed on to the ABL Lenders.

Finally, as more fully set forth in the ABL Lenders' Memorandum, the disgorgement claim (Count 4) must be dismissed because the Intercreditor Agreement contractually bars a disgorgement claim against the ABL Agent. The Intercreditor Agreement explicitly states that any funds credited to the account of the ABL Agent shall not "be subject to disgorgement or be deemed to be held in trust by the ABL Agent for the benefit of" Salus and the SCP Lenders. The Intercreditor Agreement also contains an explicit acknowledgment by Salus that all ABL Priority Collateral received by the ABL Agent may be applied in whole or in part to the ABL Claims at any time.

## BACKGROUND

### I. Salus's Factual Allegations[2]

Assuming the truth of the factual allegations in Salus's Complaint, as required for the purposes of this Motion, on December 10, 2013, GE Capital Corporation, as administrative agent (the "Original ABL Agent"), the Original ABL Lenders and RadioShack Corporation (collectively with certain other Debtors in the bankruptcy case, "RadioShack") entered into the Original ABL Credit Agreement,[3] pursuant to which the

---

[2] A more complete recitation of the Factual Allegations is set forth in the ABL Lenders' Memorandum.

[3] A copy of the Original ABL Credit Agreement is attached as Exhibit B to the *Declaration of Elliot Moskowitz Filed in Support of the Motion of the ABL Lenders to Dismiss the Adversary Complaint of Salus Capital Partners, LLC* (the "Moskowitz Decl.") [D.I. 17].

Original ABL Lenders provided $585 million in secured financing to RadioShack. Compl. ¶ 2. The financing consisted of a $50 million term loan and $535 million in revolving loans. *Id.* ¶ 2. All of the Original ABL Lenders' loans were secured by a first-priority lien on the ABL Priority Collateral (which Salus renames the "Liquid Collateral") and a second-priority lien on RadioShack's fixed assets, intellectual property and subsidiaries' equity interests. *Id.* ¶ 24-26.

On the same day, the SCP Lenders entered into a lending agreement with RadioShack, agreeing to provide a $250 million term loan secured by a first-priority lien on RadioShack's fixed assets, intellectual property and equity interests of RadioShack subsidiaries and a second-priority lien in the Liquid Collateral. *Id.* ¶¶ 20-21. The Complaint alleges that because the SCP Lenders and the Original ABL Lenders were both secured by the same collateral pool, the SCP Agent and the Original ABL Agent entered into an Intercreditor Agreement dated December 10, 2013 (the "Intercreditor Agreement"),[4] which set out the rights and priorities of the two sets of lenders with respect to such collateral. *Id.* ¶ 27.

On October 3, 2014, Cantor Fitzgerald succeeded the Original ABL Agent as the administrative agent for the ABL Lenders. *Id.* ¶ 33.[5] On the same day, RadioShack entered into the First Amendment to the Original ABL Credit Agreement with the ABL Agent and the ABL Lenders.[6] Compl. ¶ 33. The First Amendment provided for the conversion of the $535 million in outstanding revolving loans into (i) a loan facility in an

---

[4] A copy of the Intercreditor Agreement is attached as Exhibit A to the Moskowitz Decl.

[5] The only other allegation in the Complaint regarding Cantor Fitzgerald is in paragraph 17, where it is named as a party.

[6] A copy of the First Amendment is attached as Exhibit C to the Moskowitz Decl.

aggregate principal amount of $275 million, (ii) a letter of credit facility in an aggregate principal amount of $120 million, and (iii) a revolving loan facility in an aggregate principal amount of up to $140 million (collectively, the "Amended ABL Loans"). *Id.*

## II. Salus's Claims

Salus alleges that the ABL Lenders' claims are subordinated to the SCP Lenders' secured claims with respect to the Term Out Revolving Loans because the Term Out Revolving Loans no longer constituted revolving loans pursuant to the First Amendment. *Id.* ¶ 34. According to Salus, Section 2.1(a) of the Intercreditor Agreement provides that only revolving loans under the Amended ABL Credit Agreement are entitled to priority over the loan held by Salus (the "SCP Term Loan"). *See id.* ¶¶ 3, 37, 38. Thus, Salus asserts that $129 million of payments made to the ABL Lenders belongs, and must be disgorged to, the SCP Lenders, and the remaining balance of the Term Out Revolving Loans is contractually subordinated to the SCP Lenders' secured claims. *Id.* ¶ 39.[7] Salus also (i) seeks that the Court make certain declaratory judgments in line with its interpretation of the Intercreditor Agreement and (ii) asserts a breach of contract claim against the ABL Lenders with respect to their performance under the Intercreditor Agreement contrary to Salus's interpretation of the contract and seeks specific performance of the ABL Lenders' obligations under the Intercreditor Agreement as a remedy.

---

[7] Counsel for the ABL Agent has sought clarification from counsel for Salus that disgorgement is not being sought from the ABL Agent. Counsel for Salus has refused to provide such clarification.

## ARGUMENT

### I. STANDARD OF REVIEW AND APPLICABLE LAW

#### A. To Survive a Motion to Dismiss, Salus Must Plead a "Plausible Claim for Relief"

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated by reference in Rule 7012 of the Federal Rules of Bankruptcy Procedure, this Court must apply a "plausibility standard." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007). Among other things, the complaint must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must look to the face of the Complaint – and undisputedly authentic underlying documents – and decide whether the allegations therein state any legal claim, and determine whether, under any reasonable reading of the Complaint, Salus is entitled to relief. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted).

#### B. New York Law Applies to This Adversary Proceeding

Salus's claims are governed by New York law. The Intercreditor Agreement contains a New York choice-of-law provision. *See* Intercreditor Agreement § 12.7. Such provisions are routinely enforced by Delaware courts. *Horan v. Danton (In re Prof'l Video Ass'n, Inc.)*, 2000 WL 33712295, at *3 (Bankr. D. Del. Aug. 8, 2000).

### II. SALUS FAILS TO STATE A CLAIM AGAINST THE ABL AGENT

#### A. Salus Fails to Allege Any Facts to Support Its Claims Against the ABL Agent

The Court should dismiss the Complaint against the ABL Agent for failing to allege any facts against the ABL Agent that could support a claim against it and for failure to name the ABL Agent in any of the counts. The ABL Agent is mentioned exactly twice in the Complaint: first, in paragraph 17, where Salus sets forth the parties to

5

the lawsuit and alleges that the ABL Agent is the administrative and collateral agent in connection with the Amended ABL Credit Agreement; and second, in paragraph 33, where Salus alleges that RadioShack entered into the First Amendment with "the new ABL Lenders" and the ABL Agent, as successor agent to the Original ABL Agent under the Amended ABL Credit Agreement. *See* Compl. ¶¶ 17, 33.

Courts readily dismiss an asserted claim where the plaintiff fails to assert any factual allegations to support the claim. *See, e.g., Balascio v. Leitzke (In re Leitzke)*, No. 13-12156, 2014 WL 3583706, at *2 n.13 (Bankr. D. Del. Jul. 18, 2014) (dismissing claim where plaintiff failed to allege any facts to support non-dischargeability count); *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 39-40 (Bankr. D. Del. 2011) (dismissing fraudulent transfer claims against defendant where plaintiff failed to provide any factual allegations against defendant to support its claim); *Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 405 B.R. 113, 133 (Bankr. D. Del. 2009) (dismissing counts against defendant where plaintiff provided no factual allegations to support its claims). Here, the Complaint is bereft of any allegations against the ABL Agent that could give rise to a claim and must be dismissed.

The ABL Agent is not mentioned within any of the counts of the Complaint or in Salus's prayer for relief. Accordingly, Salus has not asserted any causes of action or sought any relief against the ABL Agent. *See, e.g., Bethea v. Roizman*, No. 11-00254, 2012 WL 2500592, at *23-24 (D.N.J. June 27, 2012) (dismissing complaint against certain defendants where general counts against "all defendants" were dismissed for being vague and such defendants were not named in the other counts, which specifically named defendants); *Bates v. Harbert Mgmt., LLC (In re Dixie Pellets, LLC)*, No.

6

09-05411, 2010 WL 2367326, at *6 (Bankr. N.D. Ala. June 9, 2010) (dismissing count within a complaint against defendants not named in the count when another defendant was specifically named); *Addy v. State Farm Ins. Companies*, No. 09-02674, 2010 WL 1408886, at *2 (D. Ariz. Apr. 7, 2010) (in dismissing complaint against defendants court would "not require the [defendants] to assume that certain counts are asserted against them merely because they are named as parties to the [c]omplaint and the factual allegations implicate them, especially when the [c]ounts include no mention of them and do specifically name [a separate defendant]"). For this reason as well, the Complaint should be dismissed as against the ABL Agent.

### B. The ABL Agent Is Not Liable under Agency Law Principles for Disgorging Payments It Is Contractually Required to Make to the ABL Lenders

Even if Salus's disgorgement and breach of contract/specific performance claims (Counts 4 and 5) had been properly alleged against the ABL Agent (which they have not), these claims must also be dismissed because the ABL Agent acts as an agent for the ABL Lenders, as principals. An agent is not liable for the return of money that it collected on behalf of a principal where it has already remitted the funds to the principal in good faith. *See, e.g.*, *Hooper v. Robinson*, 98 U.S. 528, 540-41 (1878); *United States v. Cambridge Trust Co.*, 300 F.2d 76, 78 (1st Cir. 1962).

Pursuant to the express terms of the Original ABL Credit Agreement and unmodified by the First Amendment, the ABL Agent acts solely on behalf of the ABL Lenders with duties entirely administrative in nature. *See* Amended ABL Credit Agreement § 8.1(c). The ABL Agent is not an ABL Lender and has no pecuniary interest in the loans made to RadioShack. The ABL Lenders instructed the ABL Agent to enter into the Intercreditor Agreement. *Id.* § 8.14(c). The ABL Agent expressly did not

assume any obligation and has no implied duties, obligations or other liabilities under any of the documents relating to the Amended ABL Credit Agreement. *See* Amended ABL Credit Agreement § 8.1(c)(ii). Moreover, the ABL Agent is required to apply all payments received pursuant to specific distribution provisions in the Amended ABL Credit Agreement and the Intercreditor Agreement for the benefit of the ABL Lenders. Amended ABL Credit Agreement § 1.10(c); Intercreditor Agreement §§ 4.1, 4.2, 4.4(a)(ii) and 4.7(iii).

Accordingly, the ABL Agent cannot be liable to Salus for the disgorgement of payments sought in the Complaint, for which the ABL Agent acted as an administrative agent with no dominion, control or discretion over the funds it transmitted to the ABL Lenders. *See Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*, 195 B.R. 971, 982 (Bankr. D. Mass. 1996) (explaining that principle of agency law protecting agent who receives property paid under mistake and later, in good faith, delivered to a principal is consistent with mere conduit defense to a claim of fraudulent transfer and earmarking doctrine in preference law); *cf. Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 103 (Bankr. D. Del. 2010) (granting bank's motion to dismiss claim to recover funds transferred to third parties through agent bank where bank was (i) bound by terms of trust agreement to act as financial intermediary and held funds only for purpose of fulfilling instruction to make funds available to third party, (ii) had no legal title to funds, and (iii) received no benefit over challenged funds).

### C. The Intercreditor Agreement Unambiguously Precludes Salus from Seeking Disgorgement from the ABL Agent

Under New York law, the best evidence of the parties' intent is the plain meaning of a contract. *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166

(2002) (internal citation omitted). In construing a contract under New York law, a contract must be enforced according to its plain terms if the written agreement is complete, clear, and unambiguous on its face. *See Six Flags, Inc. v. Parc Mgmt., LLC (In re Premier Int'l Holdings, Inc.)*, 443 B.R. 320, 334 (Bankr. D. Del. 2010) (applying New York law); *J. D'Addario & Co. v. Embassy Indus. Inc.*, 20 N.Y.3d 113, 118 (2012); *Greenfield*, 98 N.Y.2d at 569. If a written agreement on its face is reasonably susceptible to only one meaning, that meaning governs; a court is not free to alter the contract to reflect its personal notions of fairness and equity. *See U.S. Bank Trust Nat'l Assoc. v. AMR Corp. (In re AMR Corp.)*, 730 F.3d 88, 98 (2d Cir. 2013); *Greenfield*, 98 N.Y. 2d at 569-70.

Thus, in the context of this contract dispute, in considering a Rule 12(b)(6) motion, the Court need not accept as true the construction of the Intercreditor Agreement as proffered by Salus. *See Premier Int'l Holdings*, 443 B.R. at 333. Instead, where the terms of the Intercreditor Agreement contradict allegations in the Complaint, the Intercreditor Agreement controls and the Court need not accept the allegations in the Complaint as true. *See Poindexter v. EMI Record Grp. Inc.*, No. 11-CIV-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012); *Premier Int'l Holdings*, 443 B.R. at 330 n.47.

The ABL Agent incorporates by reference the arguments made in Section I.B of the ABL Lenders' Memorandum. As set forth in greater detail therein, even if Salus's disgorgement claim (Count 4) was properly alleged against the ABL Agent (which it was not), it must be dismissed against the ABL Agent as a matter of contract law. The Intercreditor Agreement unambiguously sets forth the lien priority rights of the parties to payments made by RadioShack and provides the remedies that the parties may pursue as

9

against each other. The parties expressly agreed in the Intercreditor Agreement that no funds deposited with the ABL Agent would be subject to disgorgement under any circumstances. *See* Intercreditor Agreement § 4.4(a)(ii). Specifically, Section 4.4(a)(ii) of the Intercreditor Agreement provides:

> **Notwithstanding anything to the contrary contained in this Agreement or any other Loan Document**, but subject to clauses (b) and (c) hereof [discussed below], the ABL Agent is hereby permitted to deem all collections and payments deposited in any bank accounts, deposit account . . . , lockbox, securities accounts, commodity accounts or the Agent's Account to be proceeds of ABL Priority Collateral **and no such funds credited to the Agent's Account shall be subject to disgorgement or be deemed to be held in trust by the ABL Agent for the benefit of the SCP Secured Parties.**

(emphasis added). The Intercreditor Agreement further provides that the SCP Lenders acknowledge that "in the ordinary course of business, the ABL Agent and the ABL Lenders will apply payments," and that "all ABL Priority Collateral received by the ABL Agent may be applied . . . to the ABL Claims at any time." *Id.* §§ 4.7(i) and (iii). Section 4.4(a)(ii) plainly states that the ABL Agent is permitted to deem all payments deposited to its accounts to be proceeds of ABL Priority Collateral, at which point the SCP Lenders have no recourse to disgorge those proceeds from the ABL Agent or the ABL Lenders. Most notably, Section 4.7 provides for the application of the payments to the ABL Claims.

The only exception to this rule, set out in Section 4.4(b), is when the ABL Agent receives "proceeds of SCP Collateral." In that event, the SCP Lenders must send a "Misdirected Cash Proceeds Notice" to the ABL Agent within 30 days of the ABL Agent's receipt of such proceeds. *Id.* §4.4(b). Yet even upon receiving such a notice, the ABL Agent still need not disgorge any funds to the SCP Agent; instead, the only remedy

is for the ABL Agent to "turn over to the SCP Agent from the next proceeds of ABL Collateral received by the ABL Agent an amount equal to" the SCP Priority Collateral proceeds. *Id.* Salus does not claim to have issued a Misdirected Cash Proceeds Notice with respect to the $129 million in loan payments it now seeks to have disgorged.

Salus cannot go beyond the plain terms of the Intercreditor Agreement to attempt to obtain recourse in litigation that is contrary to the parties' clear and unambiguous written agreement. Thus, the disgorgement claim (Count 4) should be dismissed to the extent it has been alleged as against the ABL Agent.

*[remainder of page left blank intentionally]*

## **CONCLUSION**

For the foregoing reasons, Defendant Cantor Fitzgerald Securities LLC, as the ABL Agent, respectfully requests that the Court dismiss the Complaint against it in its entirety.

Respectfully Submitted,

POTTER ANDERSON & CORROON LLP

/s/ Jeremy W. Ryan
Jeremy W. Ryan (#4057)
R. Stephen McNeill (#5210)
1313 N. Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE  19899-0951
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
jryan@potteranderson.com
rmcneill@potteranderson.com

-and-

KAYE SCHOLER LLP
Scott D. Talmadge
H. Stephen Castro
Jeffrey A. Fuisz
Jonathan M. Agudelo
250 West 55th Street
New York, NY  10019-9710
Telephone: (212) 836-8000
Facsimile:  (212) 836-8689
scott.talmadge@kayescholer.com
stephen.castro@kayescholer.com
jeffrey.fuisz@kayescholer.com
jonathan.agudelo@kayescholer.com

*Counsel to Cantor Fitzgerald Securities LLC, as administrative agent under the Amended ABL Credit Agreement and the successor-in-interest to General Electric Capital Corporation under the Original ABL Credit Agreement*

Dated:  May 1, 2015
1188482